UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

OCT - 2 2017

Tyler T. Heagy
  Plaintiff,

                    :    17    4394

v.

Cumru Township Police Department,
Alfredo Ortiz, Scott S. Schmittinger,
Southern Berks Regional EMS, Jane Doe,
Berks County Sheriff's Office, John Doe,
John Doe, John Doe, Jane Doe, PrimeCare
Medical, Kayla Readinger, Paula A.
Dillman-McGowan, Victoria Gessner, Marcie
Gilmore, Kenneth Wloczewski, Keystone
Orthopaedic Specialists, Paul Newman, Berks
County Jail System, Janine Quigley, Jeffrey
Smith, Stephanie Smith, Castro, Torres,
Jessica Collins, Sandra Swartley, Berks
County Commissioners Office, Christian Y.
Leinbach, Kevin S. Barnhardt, Mark C.
Scott, Kyle Russell, Reading Health
System HIM, Jeffrey R. Coralnick, and
Berks County Prison Board,
    Defendants,

COMPLAINT WITH JURY DEMAND

## INTRODUCTION

This is a civil rights action filed by Tyler T. Heagy, a state prisoner, for damages under 42 U.S.C. §1983, alleging excessive use of force and the deliberate indifference of the denial of medical care to serious medical needs constituting unnecessary and wanton infliction of pain in violation of the Eighth Amendment to the United States Constitution and denial of medical care for an arrestee and a pretrial detainee in violation of the Due Process Clause of the Fourteenth Amendment to the Constitution. The plaintiff also alleges the torts of assault and negligence.

## JURISDICTION

1. The Court has jurisdiction over the plaintiffs claims of violation of federal constitution rights under 42 U.S.C. §§1331 and 1343.

2. The Court has supplemental jurisdiction over the plaintiffs state law tort claims under 28 U.S.C. §1367.

## PARTIES

3. The plaintiff, Tyler T. Heagy, an arrestee

P.2

prior to incarceration at B.C.J.S. as a pretrial detainee during the events described in this Complaint.

4. Defendant Cumru Township Police Department ("C.T.P.D") is a Berks County police department with a principal place of business at 1775 Welsh Rd, Mohnton, Pennsylvania 19540. Defendant C.T.P.D. is vicariously liable for the acts of its employees, agents and/or servants, including without limitation Defendant's Ortiz and Schmittinger.

5. Defendant Alfredo Ortiz, ("Officer Ortiz" or "Ortiz") is an adult individual who at all times relevant to this Complaint was employed by C.T.P.D. as an officer of the law. Officer Ortiz is being sued in his official and individual capacities.

6. Defendant Scott S. Schmittinger ("Officer Schmittinger" or "Schmittinger") is an adult individual who at all times relevant to this Complaint was employed by C.T.P.D. as an officer of the law. Officer Schmittinger is being sued in his official and individual capacities.

7. Defendant Southern Berks Regional EMS ("SBEMS")

P.3

is a Berks County EMS provider with a principal place of business at 769 Mountain View Rd, Reading, Pennsylvania 19607. Defendant SBEMS is vicariously liable for the acts of its employees, agents and/or servants, including without limitation Defendant Jane Doe.

8. Defendant ("Jane Doe") is an adult individual who at all times relevant to this Complaint was employed by SBEMS as an Emergency Medical Technician whose name is presently unknown to plaintiff. Jane Doe is being sued in her official and individual capacities.

9. Defendant Berks County Sheriff's Office ("B.C.S.O") is a Berks County law enforcement agency with a principal place of 633 Court Street, Reading, Pennsylvania 19601. Defendant B.C.S.O. is vicariously liable for the acts of its employees, agents and/or servants, including without limitation Defendants John Doe, Jane Doe, John Doe, and John Doe.

10. Defendant ("John Doe") is an adult individual who at all times relevant to this Complaint was employed by B.C.S.O. whose name is presently unknown to plaintiff. John Doe is being sued in his official and

p.4

individual capacities.

11. Defendant ("Jane Doe") is an adult individual who at all times relevant to this Complaint was employed by B.C.S.O. whose name is presently unknown to plaintiff. Jane Doe is being sued in her official and individual capacities.

12. Defendant ("John Doe") is an adult individual who at all times relevant to this Complaint was employed by B.C.S.O. whose name is presently unknown to plaintiff. John Doe is being sued in his official and individual capacities.

13. Defendant ("John Doe") is an adult individual who at all times relevant to this Complaint was employed by B.C.S.O. whose name is presently unknown to plaintiff. John Doe is being sued in his official and individual capacities.

14. Defendant Prime Care Medical, Inc. ("Prime Care") was contracted by B.C.J.S. to provide health care service to prisoners at the B.C.J.S. with a principal place of business at 3940 Locust Lane, Harrisburg, Pennsylvania 17109. Defendant Prime Care is vicariously liable for the acts of its employees, agents and/or servants, including without limitation Defendant's Readinger,

P.5

McGowan, Gessner, Gilmore, Wloczewski, and Juartley.

15. Defendant Kayla Readinger ("Readinger") is an adult individual who at all times relevant to this Complaint was employed by PrimeCare as a Medical Assistant. Readinger is being sued in her official and individual capacities.

16. Defendant Paula A. Dillman-McGowan ("McGowan") is an adult individual who at all times relevant to this Complaint was employed by PrimeCare as a Certified Registered Nurse Practitioner. McGowan is being sued in her official and individual capacities.

17. Defendant Victoria Gessner ("Gessner") is an adult individual who at all times relevant to this Complaint was employed by PrimeCare as an MD. Gessner is being sued in her official and individual capacities.

18. Defendant Marcie Gilmore ("Gilmore") is an adult individual who at all times relevant to this Complaint was employed by PrimeCare as Medical Supervisor. Gilmore is being sued in her official and individual capacities.

19. Defendant Kenneth Wloczewski ("Wloczeuski") is an adult individual who at all times relevant to this

P. 6

Complaint was employed by PrimeCare as a DO.
Wloczewski is being sued in his official and
individual capacities.

20. Defendant Keystone Orthopaedic Specialists, LLC
("Keystone") is a medical establishment that provides
medical services for PrimeCare with a principal
place of business at 2211 Quarry Drive, STE E52,
Reading, Pennsylvania 19609. Defendant Keystone
is vicariously liable for the acts of its employees,
agents and/or servants, including without limitation
Dr. Neuman.

21. Defendant Paul Newman ("Dr. Neuman") is an
adult individual who at all times relevant to
this Complaint was employed by Keystone as a doctor.
Dr. Neuman is being sued in his official and
individual capacities.

22. Defendant Reading Health System HIM ("HIM")
is a medical establishment that provides medical
services for PrimeCare with a principal place of
business at Sixth Avenue and Spruce Street, West
Reading, Pennsylvania 19611. Defendant HIM is
vicariously liable for the acts of its employees,
agents and/or servants, including without limitations
Coralnick

P.7

23. Defendant Jeffrey H. Coralnick ("Coralnick") is an adult individual who at all times relevant to this Complaint was employed by HIM as an MD. Coralnick is being sued in his official and individual capacities.

24. Defendant Berks County Jail System ("B.C.J.S.") is the county jail of Berks County with a principle place of business at 1287 County Welfare Road, Leesport, PA 19533. Defendant B.C.J.S. is vicariously liable for the acts of its employees, agents and/or servants, including without limitation Defendants Quigley, J. Smith, S.Smith, Russell, Castro, Torres, Collins, Swartley, and all members of the B.C.J.S. Prison Board.

25. Defendant Janine Quigley ("Quigley") is an adult individual who at all times relevant to this Complaint was employed by B.C.J.S. as Warden. Quigley is being sued in her official and individual capacities.

26. Defendant Jeffrey Smith ("J.Smith") is an adult individual who at all times relevant to this Complaint was employed by B.C.J.S. as Chief Deputy Warden Custody. J.Smith is being sued in his official and individual capacities.

P.8

27. Defendant Stephanie Smith ("S.Smith) is an adult individual who at all times relevant to this Complaint was employed by B.C.J.S. as Deputy Warden for Treatment. S. Smith is being sued in her official and individual capacities.

28. Defendant Jessica Collins ("Collins) is an adult individual who at all times relevant to this Complaint was employed by B.C.J.S. as Clinical and Counseling Supervisor. Collins is being sued in her official and individual capacities.

29. Defendant Sandra Swartley ("Swartley") is an adult individual who at all times relevant to this Complaint was employed by B.C.J.S. as Mental Health Supervisor. Swartley is being sued in her official and individual capacities.

30. Defendant Castro ("Castro") is an adult individual who at all times relevant to this Complaint was employed by B.C.J.S as a Lieutenant whose first name is presently unknown to plaintiff. Castro is being sued in his official and individual capacities.

31. Defendant Torres ("Torres) is an adult individual who at all times relevant to this Complaint was employed by B.C.J.S. as a Captain. Torres is being

p.9

sued in his official and individual capacities.

32. Defendant Kyle Russell ("Russell") is an adult individual who at all times relevant to this Complaint was employed by B.C.J.S as Deputy Warden for Operations. Russell is being sued in his official and individual capacities.

33. Defendant Berks County Commissioner's Office ("B.C.C.O.") is responsible for overseeing and supervising Berks County with a principal place of business at 633 Court Street, Reading, Pennsylvania 19601. Defendant B.C.C.O. is vicariously liable for the acts of its employees, agents and/or servants, including without limitation Defendants Leinbach, Barnhardt, and Scott.

34. Defendant Christian Y. Leinbach ("Leinbach") is an adult individual who at all times relevant to this Complaint was employed by B.C.C.O. as Chair Commissioner. Leinbach is being sued in his official and individual capacities.

35. Defendant Kevin S. Barnhardt ("Barnhardt") is an adult individual who at all times relevant to this Complaint was employed by B.C.C.O. as a commissioner. Barnhardt is being sued in his

P.10

official and individual capacities.

36. Defendant Mark C. Scott ("Scott") is an adult individual who at all times relevant to this Complaint was employed by B.C.C.O. as a commissioner. Scott is being sued in his official and individual capacities.

37. All the defendants have acted and continue to act under the color of the state law at all times relevant to this Complaint.

## EXHAUSTION

38. There is a grievance procedure available at the institution where plaintiff is incarcerated during all times relevant to this Complaint.

39. Plaintiff submitted inmate communication forms, sick calls, and grievances relating to this Complaint and completed the process to the greatest extent possible.

## FACTS

40. On September 27th, 2015, between 2:00AM and 3:30AM plaintiff informed Ortiz that his wrist was broken and is in severe pain and

P. 11

requested to be transported to the hospital while being placed in handcuffs.

41. On September 27th, 2015, Scott S. Schmittinger dispatched SBEMS to the scene. Plaintiff was was evaluated by an SBEMS EMT, "Jane Doe", and she informed Ortiz and Schmittinger that plaintiff did not need any medical treatment.

42. On September 27th, 2015, plaintiff informed Ortiz and Schmittinger that he has had broken bones before, he knows his wrist is broken, and requested to be taken to the hospital for treatment. Ortiz and Schmittinger denied plaintiff's request.

43. On September 27th, 2015, plaintiff was at central booking when "Jane Doe" requested to take pictures of his injuries. Plaintiff informed "Jane Doe" that he will not take any pictures until he is taken to the hospital for medical treatment for his broken wrist. "John Doe" grabbed plaintiff by the throat choking him until he submitted to take pictures "Jane Doe" requested. Plaintiff was in full wrist and ankle shackles while being choked by "John Doe".

44. Between the late night hours of September 27th, 2015, and early morning hours of September 28th, 2015, plaintiff was transported by "John Doe"

P.12

and "John Doe" of the B.C.S.O. to the B.C.J.S.
Plaintiff requested that he be transported to the
hospital to receive medical treatment for his
broken wrist. "John Doe" and "John Doe" informed
plaintiff that he was not going to be transported to
the hospital, denying plaintiff his requested medical care.

45. In the early morning hours of September 28th,
2015, plaintiff was screened and committed to
B.C.J.S. Plaintiff was assessed by Readinger during
the intake screening process. During the intake screening
process plaintiff informed Readinger that he has had
broken bones before and that his left wrist is in
severe pain and is broken. Plaintiff then requested
to be transported to the hospital to receive medical
treatment. Readinger denied plaintiffs request and
was committed to B.C.J.S. without medical
clearance for incarceration.

46. On October 2nd, 2015, plaintiff submitted an
inmate communication form informing the medical
department of his requests for treatment of his
broken wrist that were continuously denied. In response
an LPN for PrimeCare, Kelcey Klopp, informed plaintiff
that he is scheduled to be seen by the provider.

47. Between October 2nd, 2015, and October 5th, 2015,
plaintiff informed an unknown female staff member
P.13

of Prime Care that he is in severe pain and still has not been seen for treatment of his broken wrist. This unknown female had assessed plaintiff on his housing unit. The unknown female informed plaintiff that there is nothing noted in his charts about his broken wrist but she would put a physical examination request into medical for his broken wrist.

48. On October 6th, 2015, an RN for Prime Care, Debra McFadden, had performed a physical examination of plaintiffs broken wrist. After Debra McFadden's assessment of plaintiffs broken wrist she concluded that X-rays were needed to better assess plaintiffs broken wrist.

49. On the morning of October 8th, 2015, plaintiff had X-rays taken of his broken wrist by an unknown female staff member of Prime Care at the B.C.J.'s medical department.

50. On October 8th, 2015, an MD for Physician's Mobile X-Ray, Elliott Wagner, concluded that there was an unhealed fracture of the waist scaphoid and recommended an Orthopedic evaluation.

51. On October 8th, 2015, Gessner received Physician's Mobile X-Ray report and forwarded the report to McGowan. McGowan reported in a medical sick call

P.14

that plaintiff was not taken to ER for clearance for incarceration, the pain is constant in left wrist, and is requesting an appointment with an Orthopedic.

52. On October 8th, 2015, at approximately 1:00PM plaintiff was informed by McGowan that the X-ray confirms that his wrist is broken but the provider is denying him treatment because his injury is being deemed a pre-existing injury. Plaintiff demanded to be medically treated for his broken wrist and informed McGowan that his wrist is in constant pain, is affecting his daily activity, and can't sleep at night. Plaintiff further stated that denying him medical treatment is wrong and his broken wrist needs medical attention. McGowan then went to confer with Gilmore about treating plaintiff's broken wrist. McGowan then informed plaintiff that he is still being denied treatment for his broken wrist. McGowan then provided plaintiff with a gauze pad and ace wrap for his broken wrist.

53. On October 8th, 2015, plaintiff submitted a grievance about the layered denial of treatment by the police, sheriffs, and the B.C.J.S.'s medical department. Plaintiff also requested to know the commitment policies process for someone claiming injury and requests to go to the hospital. This

P.15

grievance was never responded to by B.C.J.S.

54. On October 19th, 2015, an Administrative Assistant for PrimeCare, Joetta Kline, was advised by Melanie from Dr. Neuman's office that plaintiffs injury was an old fx, which usually are not urgent and to advise them how soon patient needed to be seen.

55. On October 19th, 2015, Gessner informed plaintiff that the provider is denying treatment for his broken wrist because it is being classified as an old pre-existing injury. A sick call report by Gessner states that plaintiff credibly avers that he has no injury or problems prior to his arrest and offers proof. Plaintiff informed Gessner that his wrist is in constant pain, it is affect his daily activity, and can't sleep at night. Plaintiff further stated that the denial of treatment was wrong and it is unfair to force him to suffer for something that is totally out of his control.

56. On October 19th, 2015, plaintiff submitted a grievance in response to Gessner informing him that his broken wrist was deemed an old pre-existing injury. Within this grievance plaintiff grieved the denial of medical treatment and demanded to be treated. This grievance was never responded to by B.C.J.S.

P.16

57. On October 28th, 2015, McGowan informed plaintiff that he is scheduled for a CT scan and will meet with Gessner to review the results of the CT scan.

58. On November 10th, 2015, plaintiff was given a CT scan on his left broken wrist.

59. On November 14th, 2015, plaintiff submitted an inmate communication form requesting to be treated for his broken wrist. This communication was responded to by an LPN for PrimeCare, S. Bensigner, that stated he is being treated for pain at this time, when the provider has news he will receive it.

60. On November 16th, 2015, a report from Coralnick was reviewed by Gessner and forwarded to Wloczewski. This report stated "A CT scan of left wrist was performed with reconstructions. There is a near complete transverse fracture through the waist of the navicular, nondisplaced and mildly comminuted. The proximal pole of the navicular is mildly increased in density compared to the other osseous structures, concerning for early changes of vascular necrosis. No other acute fracture is seen, there is a small linear calcification noted proximal to this pisiform. There is normal osseous alignment. IMPRESSION: Near complete

P. 17

transverse, mildly comminuted, fracture of the waist of the navicular concerning for early changes of avascularnnecrosis."

61. On or about November 26th, 2015, an LPN for Prime Care, Crissa Carroll, signed a sick call that plaintiff submitted stating he has yet to be treated for his broken wrist and numbness.

62. On December 4th, 2015, plaintiff submitted a grievance status of his treatment and records. S. Smith responded to this grievance on January 8th, 2016, and stated that plaintiff did complain about this injury the day he was committed, he received a CT scan on November 10th, 2015, was seen by specialist on December 24th, 2015, medical is working on a follow up appointment, and the delay in response due to the grievance being misrouted.

63. On December 10th, 2015, plaintiff met with Collins, Swartley, and Castro during an Institutional Classification Committee ("ICC") meeting. During this meeting plaintiff informed the three ICC members that he would like an update on his treatment, something more supportive for his broken wrist other than a gauze pad and ace wrap, and pain medication for his broken wrist. Swartley reported plaintiffs medical

P.18

issues to Gilmore and included those medical issues in the Institutional Classification Committee's Report.

64. On December 15th, 2015, an LPN for PrimeCare, Elizabeth Garcia, provided plaintiff with a cock up splint for his broken left wrist.

65. On December 24th, 2015, plaintiff was transported to the Philadelphia Hand Center and was seen by a MD, David Zelouf. The physician's report that was prepared by Dr. Zelouf stated that X-ray on left wrist demonstrates a scaphoid waist nonunion with collapse and does require surgery. Also without surgery the scaphoid will not heal and plaintiff will certainly develop an arthritic wrist.

66. On December 24th, 2015, plaintiff submitted an Inmate Communication Form requesting the recommended wrist surgery to treat his broken wrist.

67. On December 31st, 2015, plaintiff had met with three B.C.J.S. ICC members, Collins, Castro, and Swartley. During this meeting the ICC members informed plaintiff that PrimeCare's doctor will have to review the recommendations of the specialist and then meet with plaintiff to review the treatment plan. Plaintiff informed the ICC members that he needs the recommended surgery

P. 19

because his wrist is in severe pain constantly, affects his daily activity, and he has a hard time sleeping at night.

68. On January 8th, 2016, plaintiff appealed grievance #2257-15 that was responded to by Quigley.

69. On January 8th, 2016, plaintiff submitted a grievance which was responded to by Castro. In Castro's response to this grievance he informed plaintiff to refer to grievance #2257-15 and that medical questions are to be communicated to the medical department and not the grievance process.

70. On January 9th, 2016, plaintiff submitted an inmate communication form that was responded to on January 19th, 2016, by S. Smith. S. Smith's response is contradictory to her response to grievance #2257-15. In this communication response she states the plaintiff has not been denied his right to health care and he was screened at booking and denied any injury. In grievance #2257-15 S. Smith responded by stating that plaintiff "did complain about this injury the day you were comitted as it did not occur while in our custody".

71. On January 28th, 2016, plaintiff was transported

P. 20

to the Philadelphia Hand Center where he signed his consent for surgery paperwork in order to proceed with recommended surgery.

72. On February 4th, 2016, plaintiff met with three ICC members for B.C.J.S. Collins, Castro, and Gilmore. Plaintiff spoke to the ICC members about the responses to his inmate communication forms, and grievances regarding B.C.J.S.'s commitment policy and the medical treatment for his broken wrist.

73. On February 24th, 2016, plaintiff was transported to the Thomas Jefferson University Hospital and received surgery on his broken wrist. Dr. Zelouf had to place a screw in the scaphold to reunite the bone and also grafted bone to the scaphold to repair plaintiff's broken wrist. This surgery was performed one-hundred and fifty (150) days after plaintiff had been committed to B.C.J.S.

74. On February 25th, 2016 plaintiff submitted a grievance about not receiving post surgery pain medication. Gilmore responded by stating that plaintiff has been receiving Percocet as ordered.

75. On March 1st, 2016, an LPN For PrimeCare, Stephanie Huffmaster, reported in chart notes that the plaintiff states he has not had any pain medication since

P. 21

receiving surgery and has Percocet order but none on hand at this time.

76. On March 3rd, 2016, an RN for PrimeCare, George Byerly, reported in chart notes that T Haskin called and obtained permission to utilize emergency vicodin.

77. On March 30th, 2016, plaintiff submitted an inmate communication form asking what the B.C.J.S.'s commitment policy is and was responded to by Quigley. Quigley's response did not answer the plaintiff's question about the B.C.J.S.'s commitment policy.

78. On April 23rd, 2016, plaintiff submitted a grievance in regard to the B.C.J.S.'s commitment policy. This grievance was responded by Torres. Torres stated that the grievance window was gone to grieve the violation to the B.C.J.S.'s commitment policy. Plaintiff has submitted multiple inmate communications and grievances in an attempt to know what exactly the commitment policy is to properly grieve the violation. Plaintiff avers that in order to grieve a policy you have to be informed of that policy so it can be taken in the proper context.

79. On May 5th, 2016, Charmaine Mikosz reported in

P. 22

the medical chart notes that plaintiff is not receiving physical or heat therapy.

80. On May 12th, 2016, Administrative Assistant for PrimeCare, Joetta Kline, reported in the medical chart notes that a fax was sent to Kristen at Berks Heim to schedule plaintiff OT.

81. On May 18th, 2016, J. Smith responded to plaintiffs grievance filed on April 23rd, 2016. In this response J. Smith informed plaintiff that he will not be receiving a copy of the commitment policy and B.C.J.S. does not provide copies of policies to inmates.

82. On May 22nd, 2016, plaintiff submitted a grievance in regard to his physical and heat therapies. This grievance was responded to by an MA for PrimeCare, Erin Lutch, stating the medical department has continually attempted to schedule physical therapy for plaintiff.

83. On May 22nd, 2016, plaintiff submitted an appeal on the grievance filed on April 23rd, 2016, that J. Smith had responded to but the appeal was never responded to by the B.C.J.S.

84. On June 6th, 2016, plaintiff was medically

P.23

Cleared by Wloczewski.

85. On September 22nd, 2016, an LPN for PrimeCare, Stephanie Huffmaster, reported in the chart notes that green band physical therapy was given to plaintiff and notes plaintiff was shaking while completing exercises.

86. On October 10th, 2016, Joetta Kline, Administrative Assistant for PrimeCare had talked to Kayla, the occupational therapist at Berks Heim and was advised the next step for plaintiff's OT would be more aggressive involving weights.

87. On October 11th, 2016, a Lieutenant for B.C.J.S, Phillips, informed HSA for PrimeCare, Erin Lutchkus, that there is no access to weights for pt/ot within the jail, due to security reasons.

## CAUSE OF ACTION

88. Plaintiff incorporates by reference paragraphs 1 through 87 above as if fully set forth herein for all causes of action.

## RELIEF

Plaintiff respectfully requests that this

P.24

Court enter judgement granting:

89. A declaration that Defendants violated Plaintiffs rights.

90. Compensatory damages against each defendant jointly and severally.

91. Punitive damages against each defendant jointly and severally.

92. Nominal damages against each defendant jointly and severally.

93. A jury trial on all issues triable by a jury.

94. Any other relief this Court deems necessary.

Respectfully Submitted

Tyler T. Heagy

Tyler T. Heagy
Plaintiff

Address: Tyler T. Heagy Inmate # MW8826  SCI Smithfield
P.O. Box 999
1120 Pike Street,
Huntingdon, PA 16652

P.25

# VERIFICATION

Tyler T. Heagy, hereby deposes and says the facts set forth in the foregoing Civil Rights action under 42 U.S.C. §1983, are true and correct to the best of his knowledge, information and belief, and are subject to 28 U.S.C. §1746 crimes code relating to unsworn falsification to authorities.

Tyler T. Heagy
Tyler T. Heagy
Plaintiff