## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TYLER T. HEAGY** | |
| **Plaintiff,** | |
| **v.** | **CIVIL ACTION NO. 17-4394** |
| **ALFREDO ORTIZ,** *et al.*, | |
| **Defendants.** | |

## MEMORANDUM OPINION

**Rufe, J.**                                                                                                    **July 7, 2021**

Plaintiff Tyler Heagy, a state prisoner currently incarcerated at SCI Phenix, brings this *pro se* civil action under 42 U.S.C. § 1983 alleging that he was denied adequate and necessary medical treatment for a broken wrist. Defendants have moved to dismiss, and for the reasons stated below, their motions will be granted.

### I.   BACKGROUND

### A.  Facts[1]

Following his arrest on September 27, 2015, and while at central booking, Plaintiff alleges that while Officers Alfredo Ortiz and Scott Schmittinger were handcuffing him, he told them that his wrist was broken and that he was in severe pain. Plaintiff does not allege that the broken wrist occurred during the arrest. Plaintiff requested to be taken to the hospital and Officer Schmittinger called the Southern Berks Regional EMS ("SBREMS"), who dispatched an EMT. The EMT examined Plaintiff's wrist and told Officers Ortiz and Schmittinger that Plaintiff did not require medical treatment. Plaintiff told the officers that he knew that his wrist was broken,

---

[1] Plaintiff's allegations are assumed true for the purposes of this motion to dismiss.

and he needed treatment, but the Officers denied his request. Plaintiff was then transported to the Berks County Jail.

A few days later, on October 2, 2015, Plaintiff submitted an inmate communication form requesting treatment for his wrist. Around this time, he also informed a member of PrimeCare, the company contracted by Berks County to provide medical services to incarcerated individuals, of his wrist pain. On October 6, 2015, Debra McFadden, a registered nurse working for PrimeCare, examined his wrist and ordered X-rays. X-rays were taken on the 8th showing an unhealed fracture in his wrist.

Plaintiff alleges that despite the X-rays showing the fracture, employees for PrimeCare informed him that his injury was "deemed a pre-existing injury" and "an old fx [fracture], which usually are not urgent."[2] Plaintiff alleges that he informed the medical staff that he was in constant pain, the pain affected his daily activity, and he couldn't sleep at night. Despite his complaints, he was denied treatment at this time.

Plaintiff alleges that he was denied treatment for his wrist, as a pre-existing injury, until November 10, 2015, when he was given a CT scan. The report from the CT scan found that a near complete "transverse fracture" through the wrist and early signs of avascular necrosis, or death to bone tissue from lack of blood supply.[3] Plaintiff received no further treatment for his wrist until December 24, 2015, when he saw a specialist who informed Plaintiff that without surgery, his wrist would not heal correctly and likely become arthritic. On February 24, 2016, Plaintiff received surgery on his injured wrist.

---

[2] *Id.* ¶¶ 52, 54.

[3] *Id.* ¶ 60.

Plaintiff further alleges that after his surgery, he did not receive the prescribed pain medication or appropriate physical or occupational therapy. Plaintiff alleges he received physical therapy involving bands, but because there was "no access to weights for pt/ot within the jail, due to security reasons," he was unable to move on to the next level of therapy which used weights.[4]

## B. Procedural Background

Plaintiff filed this action on November 2, 2017, naming multiple Defendants. These defendants fall into four groups: the Cumru Township Police Department Defendants ("CTPD Defendants"), which includes Officer Alfredo Ortiz and Officer Scott S. Schmittinger; the PrimeCare Medical Defendants ("PrimeCare Defendants"), which includes PrimeCare Medical, Victoria Gessner, Kenneth Wloczewski, Paula Dillman-McGowan, Marcie Gilmore, Sandra Swartley, and Kayla Readinger; the Berks County Jail System Defendants ("BCJS Defendants"), which includes Fernando Torres, Janie Quigley, Stephanie Smith, Captain Castro, and Jessica Collins; and Southern Berks Regional EMS and an unnamed EMT ("SBREMS").

In January of 2018, Defendants moved to dismiss,[5] and in March of 2018 Plaintiff moved for the appointment of counsel.[6] The Court granted Plaintiff's motion, placed the action in civil suspense, and referred the case to the Prisoner's Civil Rights Panel for the Eastern District of Pennsylvania.[7] The Court informed Plaintiff that he had "no legal right to an attorney in this civil action, and that the Court is not appointing an attorney to represent him. Rather, the Court is

---

[4] *Id.* ¶ 87.

[5] *See* Doc. Nos. 26, 27, 28, 29.

[6] *See* Doc. No. 36.

[7] *See* Doc. No. 41.

asking an attorney to review Plaintiff's case. That attorney may exercise his or her discretion in determining whether to agree to represent Plaintiff in this action."[8]

The action remained before the Panel for over a year and was not selected by a volunteer attorney. On April 6, 2020, the Court removed the case from suspense and ordered Plaintiff to respond to the pending motions to dismiss by May 31, 2020.[9] On July 15, 2020, the Court removed the case from the Panel, and extended Plaintiff's time to respond to August 14, 2020.[10] Plaintiff did not file a response, but on December 21, 2020, Plaintiff sent a letter to the Court requesting copies of the motions and asking for an extension to respond. Plaintiff also claimed to have sent an earlier response that the Court did not receive. The Court granted this extension and ordered counsel for Defendants to mail Plaintiff copies of the pending motions.[11]

On January 15, 2021, Plaintiff requested an additional extension, and claimed that he had still not received the Motions from the Defendants.[12] The Court granted an additional extension and directed the Clerk of Court to mail Plaintiff copies of all pending motions and memoranda.[13] On March 28, 2021, Plaintiff, by letter, informed the Court that he had received the motions and requested an additional extension.[14] The Court noted that nearly "a full year has passed from the Court's first deadline for Plaintiff's response," but recognizing the impact of COVID-19 and the

---

[8] *Id.*

[9] *See* Doc. No. 52,

[10] *See* Doc. No. 54.

[11] *See* Doc. No. 58.

[12] *See* Doc. No. 63

[13] *See* Doc. No. 64.

[14] *See* Doc. No. 67.

disruptions of mail service at correctional facilities, the Court granted a final 60-day extension to respond to the pending motions.[15] Plaintiff has not responded to any pending motion.

## II.  LEGAL STANDARD

A complaint filed *pro se* is "to be liberally construed,"[16] and must be held to "less stringent standards than formal pleadings drafted by lawyers."[17] However, *pro se* plaintiffs are still subject to basic pleading requirements.[18] Although Plaintiff has not responded to the motions to dismiss, the Court will still consider them on the merits.[19] "[M]otions to dismiss should not be granted without an analysis of the merits of the underlying complaint, notwithstanding local rules regarding the granting of unopposed motions."[20]

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[21] The question is not whether the plaintiff ultimately will prevail but whether the complaint is "sufficient to cross the federal court's threshold."[22] In evaluating a challenged complaint, a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading

---

[15] *See* Doc. No. 68.

[16] *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

[17] *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

[18] *Rhett v. New Jersey State Superior Cour*t, 260 F. App'x 513, 515 (3d Cir. 2008).

[19] Defendants also moved to dismiss the case based on a failure to prosecute, but the Court does not decide the case on these grounds.

[20] *Gary v. Pa. Human Relations Comm'n*, 497 F. App'x 223, 226 (3d Cir. 2012) (citing *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991).

[21] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)); *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

[22] *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (citations omitted).

of the complaint, the plaintiff may be entitled to relief."[23] However, the Court "need not accept as true 'unsupported conclusions and unwarranted inferences'"[24] or "legal conclusions."[25]

### III.   DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."[26] Plaintiff alleges that Defendants knew of his wrist condition and failed to ensure he received adequate medical care. The Court interprets his claims to allege violations of the Due Process Clause of the Fourteenth Amendment as an arrestee or a pretrial detainee.[27]

To assert a constitutional violation based on a failure to provide medical treatment, a plaintiff must allege that the officials acted with "deliberate indifference" to his "serious medical needs."[28] A serious medical need is "one that has been diagnosed by a physician as requiring immediate medical treatment or is one that is so obvious that even a lay person would clearly and easily recognize the necessity for a doctor's attention,"[29] and a prison official acts with deliberate

---

[23] *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (quotation marks omitted).

[24] *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183–84 (3d Cir. 2000) (quoting *City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 n.13 (3d Cir. 1998)).

[25] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997) (quoting *Glassman v. Computervision Corp.*, 90 F.3d 617, 628 (1st Cir. 1996)) (internal quotations omitted).

[26] *West v. Atkins*, 487 U.S. 42, 48 (1988).

[27] It is unclear whether Plaintiff was a pretrial detainee at all times during his incarceration. If he had been convicted and sentenced, the claims would arise under the Eighth Amendment, but the same standard applies. *See Natale v. Camden Cnty. Corr. Facility*, 319 F,3d 575, 581–82 (3d Cir. 2003).

[28] *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

[29] *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (citation and internal quotations omitted).

indifference to a serious medical need when that official has "an actual, subjective appreciation of an excessive risk to inmate health or safety" and "consciously disregard[s] that risk."[30]

Deliberate indifference may be evinced by the intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, or denial of reasonable requests for treatment that result in suffering or risk of injury.[31] "Allegations of medical malpractice are not sufficient to establish a Constitutional violation," and "[m]ere disagreement as to the proper medical treatment is also insufficient."[32]

### A. CTPD Defendants and Southern Berks Regional EMS

Plaintiff brings claims against Defendants Ortiz, Schmittinger, SBREMS, and an unnamed EMT for the events occurring when he was arrested on September 27, 2015. He alleges that Defendants Ortiz and Schmittinger were deliberately indifferent to his broken wrist when he complained to them, and that SBREMS and an unnamed EMT for failing to properly diagnose his broken wrist. But these claims are time barred. In Pennsylvania, the statute of limitations for a § 1983 claim is two years,[33] and Plaintiff did not bring this action until November 2, 2017.

Even if the claims were timely, Plaintiff's own admissions show that he was not denied medical treatment by these Defendants. When Plaintiff complained about the pain in his wrist, Defendant Schmittinger had it examined by a trained EMT.[34] The EMT stated that Plaintiff "did not need any medical treatment,"[35] and Defendants Ortiz and Schmittinger were entitled to rely

---

[30] *Schieber v. City of Philadelphia*, 320 F.3d 409, 421 (3d Cir. 2003) (citation and internal quotations omitted).

[31] *See Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

[32] *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (citations omitted).

[33] *See Lake v. Arnold*, 232 F.3d 360, 368–69 (3d Cir. 2000).

[34] *See* Doc. No. 6 ¶¶ 41–42.

[35] *Id.* ¶ 41.

on that evaluation.[36] Plaintiff's claims against SBREMS and the unnamed EMT[37] also fail.

Construing Plaintiff's allegations liberally, Plaintiff has only alleged medical malpractice[38] and

"[a]llegations of medical malpractice are not sufficient to establish a Constitutional violation."[39]

Plaintiff's claims against the CTPD Defendants and Southern Berks Regional EMS will be

dismissed with prejudice.

## B. BCJS Defendants and PrimeCare Defendants

Plaintiff alleges that while he was incarcerated, the BCJS Defendants and the PrimCare

Defendants were deliberately indifferent in treating his wrist injury. But Plaintiff did receive

treatment for his wrist. Plaintiff received an X-ray a week after he first complained about his

wrist. A month later, he received a CT-scan. A month after that, he saw a specialist. Two months

later, he received the recommended surgery. Because Plaintiff was being treated by the medical

staff, and there are no allegations that the BCJS Defendants knew or had reason to know that his

---

[36] *See Pearson v. Prison Health Serv.*, 850 F.3d 526, 543 (3d Cir. 2017) (cleaned up) ("[A] non-medical prison official cannot be charged with the Eighth Amendment scienter requirement of deliberate indifference when the prisoner is under the care of medical experts and the official does not have a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner.").

[37] Plaintiff also appears to allege that the unnamed EMT used excessive force when trying to take pictures of his wrist. A claim for excessive force under § 1983 requires allegations that the force was used "purposely or knowingly" and that it was "objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). Plaintiff alleges that while he was in full wrist and ankle shackles, "Jane Doe," the unnamed EMT, "grabbed him by the throat choking him until he submitted to take pictures" of his wrist. Doc. No. 6 ¶ 43. Although these allegations, accepted as true for purposes of the motion, may be sufficient to meet the pleading standard, they are barred by the statute of limitations.

[38] To the extent that Plaintiff is alleging state law medical malpractice claims or state law negligence claims, the Court declines to exercise supplemental jurisdiction over state law claims in this case. Additionally, the Court notes that Plaintiff did not meet the Certificate of Merit requirements under Pennsylvania law required to bring a medical malpractice claim. *See Iwanejko v. Cohen & Grigsby*, 249 Fed. App'x 938, 943-944 (3d Cir. 2007); *see also* Pa. R. Civ. P. 1042.3. The Certificates of Merit filed by Plaintiff do not contain written statements by a licensed medical professional, as required under state law. *See* Doc. No. 32; Pa. R. Civ. P. 1042.3(e).

[39] *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (citations omitted).

medical care was improper, he cannot show these Defendants acted with deliberate indifference.[40]

Because Plaintiff received the recommended medical care, his deliberate indifference claim may only be based on allegations of delayed treatment.[41] But Plaintiff has not sufficiently alleged that his wrist injury presented as an acute medical emergency[42] or that the delays were sufficient to risk permanent injury. Additionally, Plaintiff has not alleged that the PrimeCare Defendants met the "sufficiently culpable state of mind" required for a finding of deliberate indifference.[43] Because Plaintiff's allegations are insufficient to state a claim for a constitutional violation, they will be dismissed without prejudice.

Plaintiff also alleges that he was denied proper post-surgery care by unnamed medical staff and prison officials. Specifically, Plaintiff alleges that he did not receive post-surgery pain medication. To state a claim based on this, Plaintiff must allege that his post-surgery needs were "serious," and that the medical staff or officials had the requisite state of mind when denying care. Plaintiff's allegations are insufficient. As to the alleged denial of the prescribed pain medication, Plaintiff provides no specific factual allegations. Indeed, Plaintiff does not directly allege that he was denied medication; instead he has asserted that he filed a grievance stating he did not receive the medication.[44] Plaintiff's allegations lack "sufficient specificity such that the

---

[40] *See Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993).

[41] *See* Monmouth Cty. Corr. Institutional Inmates, 834 F.2d at 346 (cleaned up) ("Short of absolute denial, if necessary medical treatment is delayed for non-medical reasons, a case of deliberate indifference has been made out.").

[42] Plaintiff's injury was described by one PrimeCare employee as an "old fx [fracture]." Doc. No. 6 ¶ 54.

[43] *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citations and quotations omitted).

[44] He states that this grievance was denied on the basis that he "has been receiving Percocet as ordered." Doc. No. 6 ¶ 74.

Court could plausibly conclude that those claims are nonfrivolous or arguable."[45] These claims

will be dismissed without prejudice.

### C. Official Capacity Claims

Plaintiff brings claims against all Defendants in both their individual and official

capacities. "[A] suit against a state official in his or her official capacity is not a suit against the

official but rather is a suit against the official's office. As such, it is no different from a suit

against the State itself."[46] In order to bring a § 1983 claim against a state or municipality, a

plaintiff must show that some policy or custom caused the alleged constitutional violation.[47]

Plaintiff makes no allegations here of any policy or custom.[48]

### IV. CONCLUSION

Plaintiff's claims against CTPD Defendants and Southern Berks Regional EMS are

untimely and will be dismissed with prejudice. Plaintiff's claims against BCJS Defendants and

PrimeCare Defendants, as alleged, are insufficient to state a claim under § 1983, and are

dismissed with leave to amend.[49] To state a claim against the PrimeCare Defendants, Plaintiff's

amended complaint must sufficiently allege that the PrimeCare Defendant's delay in treatment

---

[45] *Morales v. Wetzel*, No. 20-0439, 2021 WL 534462, at *6 (E.D. Pa. Feb. 12, 2021) (citing *Presbury v. Wetzel*, 789 F. App'x 294, 295 (3d Cir. 2020)).

[46] *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

[47] *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n.55 (1978)).

[48] Similarly, Plaintiff asserts claims against PrimeCare Medical. Plaintiff makes no allegations that PrimeCare had any policy or custom that caused a constitutional violation, and PrimeCare cannot be liable for the actions of its employees. *See Hardwick v. Packer*, 546 F. App'x 73, 77 (3d Cir. 2013) ("[L]iability in a civil rights action cannot be imposed on a supervisor on the basis of respondeat superior.").

[49] *See Fletcher-Harless Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007) ("[I]n civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile.").

created a risk of serious injury and that the PrimeCare Defendants had the required culpable state of mind. To state a claim against the BCJS Defendants, Plaintiff must sufficiently allege that his post-surgery needs were "serious," and that the prison officials that denied him care had the required state of mind. An order will be entered.